UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRON A. PAYNE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW CATE, et al.,<br><br>　　　　　Defendants. | Case No.: 1:13-cv-01214-LJO-BAM (PC)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

### I.   Screening Requirement and Standard

Plaintiff Myron A. Payne ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint, filed on August 5, 2013, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Kern Valley State Prison. Plaintiff names the following defendants: (1) Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) James E. Tilton, CDCR Secretary from 2008-2009; (3) G. Brackett, Correctional Officer-Assistant Institutional Gang Investigator (IGI) at High Desert State Prison; (4) Everett W. Fischer, Special Agent; (5) Scott Kissel, Special Agent; (6) Derral G. Adams, California State Prison-Corcoran ("CSP-Cor") Warden; (7) R. Davis, CSP-Cor Chief Deputy Warden; (8) R. Morales, CSP-Cor Correctional Counselor I; (9) Defendant P. Acosta, CSP-Cor Correctional Sergeant; (10) K. Da Viega, CSP-Cor Facility Captain; (11) J. Tercero, CSP-Cor Correctional Counselor I; (12) Raul Lopez, CSP-Cor Chief Deputy Warden; (13) A. Gomez, CSP-Cor IGI Sergeant; (14) T. Krady, CSP-Cor Sergeant; (15) R. Chavez, CSP-Cor Correctional Counselor II; (16) Casillas, CSP-Cor Correctional Officer; (17) R. Vella, CSP-Cor; (18) L. Billiou, CSP-Cor Correctional Counselor I; (19) Berna, CSP-Cor Assistant IGI; (20) J. Germond, CSP-Cor Facility Captain; (21) S. Rousseau, CSP-

Cor Correctional Lieutenant; (22) S. McLaughlin, CSP-Cor Correctional Sergeant; (23) D. Bailey, CSP-Cor Correctional Counselor II; (24) T. Morton, CSP-Cor Assistant IGI; (25) R. Marquez, Special Agent; (26) D. Barneburg, Correctional Officer at the California Substance Abuse Treatment Facility; (27) Holland, CSP-Cor Correctional Sergeant; (28) S. Pina, CSP-Cor IGI Correctional Lieutenant; (29) M. Sexton, CSP-Cor Captain; (30) R.V. Pruneda, CSP-Cor Correctional Officer; (31) D. Leon, CSP-Cor CDW; (32) R. Beer, CSP-Cor Sergeant; (33) J. C. Garcia, CSP-Cor Sergeant; (34) Connie Gipson, CSP-Cor Warden; (35) R. S. Lambert, CSP-Cor CDW; (36) J. Castro, Facility Captain; (37) Bernice Van Klaveren, CSP-Cor Principal; (38) D. Maxwell, CSP-Cor Correctional Counselor II; (39) A. Altamirano, Appeals Examiner; (40) D. Foston, Chief of Inmate Appeals; and (41) John and Jane Does 1-20.

Defendants are sued in their individual and official capacities.

<u>Gang Validation/Association</u>

Plaintiff alleges that he is a first-term prisoner incarcerated as a result of his 1993 conviction. He is serving a sentence of 28 years to life. On July 24, 2008, Defendant Brackett of High Desert State Prison presented Plaintiff with several CDC 128-B chronos and informed Plaintiff that "source items" contained in the chronos would be submitted to the OCS to validate Plaintiff as an associate of the BGF. The source items utilized by Defendant Brackett and St. Andre to establish Plaintiff as an associate of the BGF were the following:

(a) The name and CDC No. of a prisoner alleged to be a member of the BGF, which was found in Plaintiff's phone book;

(b) A personal photograph of an alleged BGF member found in Plaintiff's personal property amongst hundreds of personal photos of Plaintiff's family and friends;

(c) A newsletter published by a community activist organization "Coalition Against Police Abuse," published by the organization "Families to Amend California's Three Strikes (F.A.C.Ts);"

(d) A published media interview with slain prisoners' rights activist George Jackson, reprinted and distributed by a community activist organization, "South Chicago ABC Zine;"

3

(e) A single chapter photocopied from the commercially published book "The Black Panther Party Reconsidered," sent to Plaintiff by the community activist organization, "South Chicago ABC Zine;"

(f) A black history and cultural academic publication published by a community and academic activist organization, "National Association of Brothers and Sisters Inside and Out" by Dr. Donald R. Evans, Sr.; and

(g) A poem about African American upliftment of Black women.

Plaintiff alleges that all of the written materials identified were authorized items of personal property that may be possessed by all other racial groups except African Americans.

On August 1, 2008, Defendant Brackett and St. Andre submitted a validation package to OCS requesting that Plaintiff be validated as an associate of the BGF. Neither Defendant Brackett nor St. Andre made a "current active" determination or provided a written record finding that Plaintiff had engaged in any gang activity as defined by CDCR regulations prior to submitting the validation packet. Neither Defendant Brackett nor St. Andre procured three original, independent source items indicating Plaintiff had associated with validated gang members and/or associates prior to requesting that OCS validate Plaintiff as an associate of the BGF.

On August 27, 2008, Defendants Fischer and Kissel validated Plaintiff as a BGF associate despite not being provided with evidence or facts that Plaintiff had engaged in any gang activity or that he had associated with validated gang members or associates on three (3) independent occasions.

On September 10, 2008, Plaintiff received a CDC 128 B-2 Chrono officially notifying him that he had been validated as an associate of the BGF.

On November 18, 2008, Classification Services Representative (CSR) endorsed Plaintiff to an indeterminate SHU. CSR R. Hernandez alleged that Plaintiff was engaging in an ongoing conspiracy against the safety of others.

On January 15, 2009, Plaintiff was transferred from High Desert State Prison to CSP-Cor and confined to its Security Housing Unit (SHU) for an indeterminate term.

On January 21, 2009, Plaintiff appeared before the CSP-COR ICC/UCC for an initial review and determination on whether Plaintiff would be retained in the SHU indeterminately. When the

1  ICC/UCC commenced, Plaintiff submitted a written statement and rebuttal articulating that he had
2  never participated in any gang activity, that he was not an associate or member of the BGF or any
3  other prison gang, that there was not any written record or findings made that Plaintiff was a "current
4  active" gang associate, and that Plaintiff did not present a threat to the safety and security of the
5  institution or others.  ICC/UCC members and Defendants Davis, Acosta, Da Viega and Morales
6  refused to review, consider and accept Plaintiff's written statement and rebuttal.  ICC/UCC elected to
7  retain Plaintiff in the SHU indeterminately.  The ICC hearing was conducted in a rote and perfunctory
8  manner and an adverse action was taken against Plaintiff despite the absence of any written record or
9  finding that Plaintiff was a "current active" gang associate.
10      On March 24, 2009, Defendant Morton delivered to Plaintiff a second and new validation
11 packet.  The second validation packet alleged that Plaintiff was member of the Ansar El-Muhammad
12 (AEM) disruptive group.  Defendant Morton provided Plaintiff with three (3) items of documentation
13 alleged to be evidence substantiating that he was a member of the AME disruptive group.  The items
14 consisted of the following:
15      (a) A CDC 1030 Confidential Disclosure Form, dated March 24, 2009, stating that on or about
16          February 10, 2009, Plaintiff's name was found on an alleged "Laundry List" of AEM
17          members;
18      (b) A personal photograph of fellow Muslim prisoners and outside community volunteers
19          around 1995.  Plaintiff is not in the photograph and no person in the photograph is an AEM
20          member, associate or affiliate;
21      (c) A drawing of an Islamic motif—date and origin unknown;
22      (d) A written list of Islamic books, publications, and materials; and
23      (e) An alleged claim of SEIF admission, authored by G. Brackett.
24 Defendant Morton informed Plaintiff that he would have 24 hours to respond to the documents and
25 allegations that he was a member of the AEM.
26      On March 25, 2009, Defendant Morton returned to Plaintiff's cell to obtain Plaintiff's
27 statement and rebuttal.  Plaintiff gave Defendant Morton a written statement and rebuttal, but
28 Defendant Morton did not interview Plaintiff or allow him to express his views prior to making her

5

1   determination to submit the validation packet.  Plaintiff alleges that Defendant Morton did not
2   meaningfully consider Plaintiff's written statement and rebuttal prior to forwarding the validation
3   packet to OCS for approval.
4          On April 26, 2009, Plaintiff mailed a copy of the validation statement, rebuttal and supporting
5   documentation to Defendants Fischer and Tilton.
6          On May 14, 2009, Defendant Fischer responded to Plaintiff's submitted statement and rebuttal,
7   indicating that he was not going to review or consider Plaintiff's validation.  Plaintiff did not receive a
8   response from Defendant Tilton.
9          Defendant Brackett was the IGI agent who authored both the BGF and AEM validation
10  packets.  Defendant Brackett never gave notice as to any investigation and did not provide any
11  validation packet prior to July 21, 2008.
12         On March 24, 2009, eight months after Defendant Brackett concluded his investigation of
13  Plaintiff's alleged membership as an AEM, Defendant Morton was the only IGI agent to issue Plaintiff
14  the AEM validation packet.
15         On April 21, 2009, Defendant R. S. Marquez, special agent, authored a CDC 128 B-2
16  validation chrono.  Plaintiff alleges that Defendant Marquez falsified the document by claiming that
17  the validation packet was submitted by IGI Lt. St. Andre and the chrono had no date in which it was
18  allegedly sent to Defendant Morton.
19         On July 23, 2009, Plaintiff was scheduled to appear before ICC for a 180-day review and
20  consideration to be released from the SHU.  As a result of Plaintiff's mental health status, a staff
21  assistance (SA) was assigned to advise and assist Plaintiff in his preparation for the ICC.  Plaintiff was
22  not notified of his assigned SA until Defendant Casillas came to Plaintiff's cell door to escort Plaintiff
23  to the ICC.  While escorting Plaintiff to the ICC, Defendant Casillas stated, "Hey Payne, I am your
24  staff assistant, but I don't know what I'm suppose [sic] to do."  Plaintiff was then escorted directly into
25  ICC.  Defendant Casillas never advised or assisted Plaintiff in his preparation for the ICC, nor did
26  Defendant Casillas represent Plaintiff's position.  Defendant Casillas did not do or say anything.
27  During the ICC, Plaintiff submitted a handwritten statement and rebuttal.  In his statement, Plaintiff
28  asserted that he was not a member of the AEM, that he had been validated wrongly and without

appropriate due process and that he had been assessed an indeterminate SHU in error because there was no written record or finding that Plaintiff was a current active gang associate or disruptive group member.

Defendants and ICC members R. Lopez, A. Gomez, R. Chavez and J. Tercero refused to consider Plaintiff's written statement and rebuttal. Instead, they elected to retain Plaintiff in the SHU indeterminately. Plaintiff alleges that the ICC lasted approximately 3-5 minutes and was conducted in a rote and perfunctory manner.

On January 12, 2010, Defendant Billiou issued Plaintiff a CDC 114-D Administrative Segregation Unit placement notice. It would be recommended that Plaintiff be retained in the SHU.

On January 13, 2010, Plaintiff submitted a CDC 114-D Supplement addressed to Defendant Billiou. The supplement articulated that Plaintiff wished to call witnesses, present documentary evidence and wished to have staff assistance in the form of an Investigative Employee (IE). Plaintiff claimed that he could not participate in the ICC in a meaningful way unless he was allowed to gather evidence and call witnesses. Prior to the commencement of the scheduled ICC, Plaintiff did not receive a response from Defendant Billiou.

On January 14, 2010, Plaintiff appeared before the ICC for his SHU annual review. Plaintiff informed the ICC members and Defendants Vella, Germond, Rousseau, Kraay, Berna and Billiou that he was not prepared to continue with ICC because he was denied a meaningful opportunity to prepare. Plaintiff indicated that he had both a CDC 114-D supplement and a statement to submit to the ICC. The ICC members refused to consider Plaintiff's written documentation. Defendant Vella stated, "That stuff doesn't matter because you are being retained in the SHU. You're validated." The ICC lasted approximately 3-5 minutes. The ICC elected to retain Plaintiff in the SHU indeterminately.

On June 10, 2010, Plaintiff appeared before the ICC for his 180-day review. Plaintiff submitted a handwritten statement and rebuttal. ICC members, Defendants Davis, McLaughlin, Berna, Baily and Billiou refused to appoint a SA or IF based on the decision of psychiatrist A. Deutinger, who stated there was no need for one. No prior interview occurred between Plaintiff and Deutinger to ascertain the need for a SA or IF. During the ICC, Plaintiff asked Defendants Davis, McLaughlin, Berna, Bailey and Billiou to adhere to Plaintiff's due process rights. Defendants refused

7

to do so. The ICC lasted approximately 3-5 minutes and Defendants elected to retain Plaintiff in the SHU indeterminately.

On November 24, 2010, Plaintiff again appeared before the ICC for a 180-day review. Plaintiff submitted a handwritten statement and rebuttal. Defendants Maxwell, Beer, Billiou, Garcia and Leon refused to consider Plaintiff's statement and elected to retain him in the SHU indeterminately. Plaintiff alleges that the ICC lasted approximately 2-3 minutes.

On May 26, 2011, Plaintiff appeared before the ICC for a 180-day review. Plaintiff submitted a handwritten statement and rebuttal. Defendants Lambert, Beer, Billiou, Garcia and Castro refused to consider Plaintiff's written statement and elected to retain him in the SHU indeterminately. The ICC lasted approximately 2-3 minutes.

On January 5, 2012, Plaintiff appeared before the ICC for his annual review. Plaintiff submitted a handwritten statement and rebuttal. Defendants Gipson, Holland, Billiou, Pina and Sexton refused to consider Plaintiff's written statement and elected to retain him in the SHU indeterminately. The ICC lasted approximately 2-3 minutes.

On June 19, 2012, Defendant Billiou came to Plaintiff's cell door and informed Plaintiff that he would be going to ICC for his 180-day review and that his status would not change. Defendant Billiou also said he would request that Plaintiff be retained in SHU as a BGF associate and AEM member. Defendant Pruneda also was present.

On June 21, 2012, Plaintiff gave Defendant Pruneda a written statement and rebuttal for hand-delivery to Defendant Billiou. On June 21, 2012, an ICC was conducted with Plaintiff in absentia. Plaintiff had submitted a handwritten statement and rebuttal to Defendant Billiou, Plaintiff's assigned correctional counselor. Defendant Billiou attempted to submit Plaintiff's handwritten statement and rebuttal, but Defendants Lambert, Perez, Pina and Moreno refused to consider it. Instead, the ICC elected to retain Plaintiff in the SHU indeterminately.

On July 9, 2012, Defendant Billiou came to Plaintiff's cell door and stated, "The Chief Deputy Warden said I don't have a right to submit a written statement or present documentation at ICC." (ECF No. 34, p. 87.)

Plaintiff alleges that he has received several classification committee reviews regarding his validation and SHU status. The ICC hearings were conducted in a rote and perfunctory manner and denied Plaintiff any meaningful opportunity to express his views or receive a meaningful hearing. The committee refused to make any individualized findings regarding whether or not Plaintiff was a gang associate, current active prison gang associate or a disruptive group member. The committee also refused to make any findings regarding whether or not Plaintiff posed any real threat to the safety of others or the institution. Several endorsements of Plaintiff's indeterminate SHU were made by the CSR without individualized findings. Plaintiff also alleges that he has never received any prison gang or disruptive group status updates from the OCS or IGI.

Plaintiff asserts that he has refused to be debriefed in order to be released from the SHU.

<u>Racial Discrimination</u>

Plaintiff alleges that African-Americans represent an estimated 38% of prisoners in the CDC prison population. Prior to 2004, African Americans represented less than 15% of the total prisoners held in the indeterminate SHU for prison gang members or associates. Plaintiff alleges that around 2004, Defendants intentionally devised and implemented a plan of action to racially profile African-American prisoners who possessed, studied or read articles, newspapers, books, artwork or other forms of published, written material related to the historical, cultural, social and political experience and who associated with any African American who did the same in order to manufacture validation cases against African American/Black prisoners and place them indeterminately in the SHU.

As circumstantial evidence of Defendants' invidious discrimination, Plaintiff alleges: Defendants used materials that the prison population is allowed to possess to sanction African Americans who possessed the materials and placed them indeterminately in the SHU. Plaintiff alleges that persons of other races can possess the very same materials without repercussions because of their race. Defendants used innocuous associations that CDC prisoners are allowed to maintain to sanction African Americans who innocently associate with certain members of their racial group. Plaintiff alleges that similarly situated individuals of other races can maintain the same associations because of their race. Defendants used materials, such as articles, newspapers, books and artwork, as source

9

items for validation, but did not inform the African American prison population that they would be using these materials as source items for validation.

As additional evidence of discrimination, Plaintiff alleges that the number of African Americans validated and placed in the indeterminate SHU has spiked dramatically between 2004 and 2013 despite an absence of corresponding BGF and/or AEM related misconduct or gang activity within CDC institutions. Prior to 2004, Defendants were subjected to several lawsuits initiated by prisoners belonging to racial classifications other than African Americans who claimed they were being housed in the SHU in grossly disproportionate numbers compared to African Americans and others.

Plaintiff alleges that Defendants' classification and validation process is inherently racist and discriminatory as applied to African Americans because African Americans are presumed to be involved in the BGF prison gang and AEM disruptive groups based on their innocuous association with other African Americans in the general population and for possessing certain literature and materials specific to the African American experience. Plaintiff alleges that Defendants employ a lower standard in validating African Americans as gang members. Plaintiff contends that only African Americans are validated based on the commercially published books, articles and publications they read. Plaintiff contends that his innocuous association with prisoners of other races has been ignored, including his associations with prisoners that have been identified as enemies or alleged prison gang or disruptive group members. Plaintiff asserts that Defendants have arbitrarily chosen to ascribe significance to Plaintiff's association with members of his own race and ethnic group. Plaintiff asserts that Defendants have no legitimate, penological interest in assuming that his innocuous associations with members of his own racial or ethnic group reliably indicate gang affiliation.

Plaintiff contends that throughout his incarceration, Defendants and other CDC employees have required Plaintiff to choose his classification based on his racial group and geographic origins. Plaintiff has been repeatedly forced to choose from the urban community organizations of "Blood or Crip." Plaintiff asserts that this is Defendants' main category for California's African American street gang organizations from Southern California. Plaintiff has been questioned in this manner repeatedly at each institution where he has been incarcerated.

Conditions of Confinement

Plaintiff alleges that his retention in the SHU subjects him to atypical and significant hardship. Plaintiff asserts that he is required to spend 21-24 hours each day in a small cell built for one person but occupied by two grown adults. Defendants only allow Plaintiff to leave his cell in full mechanical restraints to go to the "walk alone," which is like a dog kennel cage with a filthy, scum encrusted sink/toilet combo without exercise equipment. Plaintiff asserts that his cell is kept extremely hot or cold with inadequate ventilation that spews debris and particles.

Plaintiff alleges that it is contradictory for Defendants to double cell prisoners with validated prison gang and disruptive group members and associates while in the SHU.

Plaintiff further alleges that Defendants fail to provide Plaintiff with any training programs, work programs, education or vocation programs, religious programs or re-entry and rehabilitation programs. Defendants also prohibit contact visiting with Plaintiff's family and friends. Defendants also deny Plaintiff those personal property items allowed for general population prisoners and Plaintiff is either forced to send the items to outside contacts or have his property destroyed by the institution. Plaintiff contends that his personal property was destroyed despite his request to have his property mailed home and having sufficient funds in his account for such mailing.

Plaintiff claims that his SHU placement has exacerbated his suffering from migraine headaches, insomnia, hearing voices, seeing visions, agitation, paranoia, anxiety and depression. Plaintiff also claims that as a result of his SHU placement he suffers from Post-Traumatic Stress Disorder symptoms and fear of further wrongdoing by Defendants and other CDC employees. Plaintiff additionally suffers body pains due to his inability to exercise his muscles. Plaintiff alleges that Defendants are deliberately indifferent to his physical and psychological well-being. He asserts that Defendants have subjected him to severe sensory and environmental deprivations, inadequate air and ventilation, deprivation of all recreational equipment, deprivation of adequate sanitary grooming supplies and adequate sanitation agents. Plaintiff further asserts that he is now ineligible for parole because of his validation.

///

///

Underground Regulations

Plaintiff alleges that Defendants validated him as an alleged prison gang associate and retained him in the SHU using underground regulations. Plaintiff asserts that the current regulations do not give notice of what conduct is proscribed and what conduct is permitted. Plaintiff complains that he was never notified that his receipt of "source items" would be used against him.

Retaliation

Plaintiff complains that Defendants have retaliated against him for being of African American descent and for practicing his Islamic beliefs.

Administrative Review

Plaintiff asserts that the administrative appeals reviewer improperly evaluated his appeals.

Failure to Train

Plaintiff alleges that the supervisory Defendants failed to train their subordinates to prevent them from maintaining a pattern of retaliation and discrimination.

Causes of Action

Plaintiff contends that Defendants violated his Fourteenth Amendment Due Process and Equal Protection rights, violated his Eighth Amendment right to be free from cruel and unusual punishments, and violated his First Amendment rights of association and freedom of religion. Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

### III. Deficiencies of Complaint

Plaintiff's complaint does not comply with Federal Rules of Civil Procedure 8 and 18. Plaintiff will be granted leave to file an amended complaint. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims. Plaintiff should amend only those claims that he believes, in good faith, are cognizable in this action.

#### A. Pleading Standards

##### 1. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint is not a short and plain statement of his claims. Instead, Plaintiff's complaint exceeds 85 pages and details events occurring at two different institutions between 2008 and 2012. Plaintiff's complaint is filled with repetition and generalized statements and lumps all defendants together in the majority of his allegations. If Plaintiff elects to amend his complaint, he must set forth specific factual allegations against each defendant.

**2. Federal Rule of Civil Procedure 18**

Plaintiff is raising numerous claims based on discrete events against different defendants. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not assert multiple claims against unrelated defendants in this action. As a basic matter, Plaintiff may not bring claims against defendants at High Desert State Prison, while simultaneously pursuing claims against defendants at Corcoran State Prison. In his amended complaint, Plaintiff shall choose which claims he wishes to pursue in this action.

**3. Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

13

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff lumps defendants together in certain of his allegations and causes of action. If Plaintiff amends his complaint, he must allege what each individual did or failed to do that resulted in a violation of Plaintiff's constitutional rights.

### 4. Official Capacity and Eleventh Amendment

Plaintiff brings suit against all defendants in their individual and official capacities. To the extent that Plaintiff seeks to bring claims against defendants in their official capacities for money damages, he may not do so. The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

### 5. Supervisory Liability

To the extent Plaintiff seeks to bring suit against any individual defendant based on his or her role as supervisor, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in

the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### B. Legal Standards

#### 1. Fourteenth Amendment - Due Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221-22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, id. at 222-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). If a protected interest is identified, the inquiry then turns to what process is due. Wilkinson, 545 U.S. at 224.

The assignment of validated gang members and associates to the Security Housing Unit (SHU) is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351

F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293 (1995)). In addition to these minimal protections, there must be "some evidence" bearing "some indicia of reliability" supporting the decision. Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013) (citing Superintendent v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768 (1985) and Bruce, 351 F.3d at 1287) (internal quotation marks omitted). A single source of sufficiently reliable information satisfies federal due process. See Bruce, 351 F.3d at 1288; Jimenez v. Whitfield, 2012 WL 244149, at *11 (E.D.Cal.2012). The evidence does not have to logically preclude any other conclusion. See Hill, 472 U.S. at 457.

### 2.     Fourteenth Amendment - Equal Protection

The Equal Protection Clause requires that all persons who are similarly situated should be treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state an Equal Protection claim, Plaintiff must show that the defendants acted with an intent or purpose to discriminate against him based on membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

### 3.     Eighth Amendment – Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).

In order to establish a violation of this duty, a prisoner must show that he was subjected to an objectively serious deprivation that amounts to a denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). A prisoner must also

show that prison officials acted with sufficiently culpable states of mind in failing to satisfy their duties. Farmer, 511 U.S. at 834. Prison officials must have acted with deliberate indifference. Id. A prison official is liable under the Eighth Amendment only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

**4. First Amendment – Retaliation**

Within the prison context "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995) (quoting Sandin, 515 U.S. 472 at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

**5. First Amendment – Association**

"An inmate does not retain rights inconsistent with proper incarceration" and "freedom of association is among the rights least compatible with incarceration." Overton v. Bazzetta, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167 (2003). Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context." Id. When such curtailment is the result of prison regulations, courts accord substantial deference to prison officials as to the appropriate means of furthering penological goals. Id. at 132. The burden is on the prisoner to disprove the validity of the regulations in question. Id.

**6. First Amendment – Religion**

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348

17

(1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

### 7. Deprivation of Property

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful postdeprivation remedy is available for the loss. Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir.1984).

If Plaintiff is complaining about an unauthorized or negligent deprivation of property, Due Process is satisfied if there is a meaningful post-deprivation remedy available to Plaintiff. Hudson, 468 U.S. at 533. California law provides an adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir.1994) (citing Cal. Gov't Code §§ 810–895).

### 8. Grievance Process

Plaintiff cannot pursue any claims against staff relating to their involvement in the administrative review of his inmate appeals. The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). To state a claim under section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, Iqbal, 556 U.S. at 677; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002), and liability may not be based merely on Plaintiff's dissatisfaction with the administrative process or a decision on an appeal, Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

### 9. Declaratory Relief

Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the

public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

### 10. Injunctive Relief

To the extent Plaintiff seeks injunctive relief regarding his placement at Corcoran State Prison or High Desert State Prison, this request is moot. Plaintiff has been transferred to Kern Valley State Prison. A request for injunctive relief becomes moot if a prisoner is transferred. Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007) (citing Johnson v. Moore, 948 F.2d 517, 510 (9th Cir.1991) (per curiam). There is no indication that Plaintiff expects to be transferred back to Corcoran State Prison or High Desert State Prison. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1996).

### IV. Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18. The Court will grant Plaintiff an opportunity to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927.  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and
4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:   **December 11, 2014**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE